Nathan R. Ring
Nevada Bar No. 12078
**STRANCH, JENNINGS & GARVEY PLLC**
3100 W. Charleston Blvd.
Suite 208
Las Vegas, Nevada 89102
(725) 235-9750
nring@stranchlaw.com

Hassan Zavareei*
Katherine M. Aizpuru*
David Lawler*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
kaizpuru@tzlegal.com
dlawler@tzlegal.com
*Counsel for Plaintiff and the Putative Class*

*Pro hac vice application forthcoming

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RICK OBRINGER, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EFFORTLESS OFFICE ENTERPRISES, LLC, and NEVADA HEART & VASCULAR CENTER, LLP,<br><br><br>　　　　Defendants. | Case No.:<br><br><br><br>**PROPOSED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PROPOSED CLASS ACTION COMPLAINT**

Plaintiff Rick Obringer ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against Defendant Effortless Office Enterprises, LLC and Defendant Nevada Heart & Vascular, LLP (the "Defendants"), alleging as follows based upon personal knowledge, information and belief, and investigation of counsel.

**INTRODUCTION**

1.     Plaintiff brings this class action against Defendant for its failure to adequately secure and safeguard protected health information ("PHI") and other personally identifiable information ("PII") (collectively, "Sensitive Private Information"). Plaintiff also alleges that Defendant failed to provide timely, accurate, and adequate notice to Plaintiff and other Class Members regarding the compromise of their Sensitive Private Information in a cyberattack (the "Data Breach").

2.     Defendant Nevada Heart & Vascular Center, LLP is a group of cardiac and vascular doctors' offices and was a client of Defendant Effortless Office.

3.     Defendant Effortless Office Enterprises, LLC is a company that provides cloud-based IT products and services to clients, including Defendant Nevada Heart & Vascular Center.

4.     Plaintiff and Class Members are current and former patients of clients of Defendant Effortless Office, including Nevada Heart & Vascular Center. In order to receive medical treatment from these clients, Plaintiff and Class Members were required to entrust Defendants with their sensitive, non-public Sensitive Private Information. Defendants could not perform their operations or provide services without collecting this Sensitive Private Information, which they retain for many years—even after the patient relationship has ended.

5.     Businesses that collect and maintain Sensitive Private Information owe a duty to the individuals to whom that information pertains to take reasonable measures to protect it from unauthorized access, disclosure, and misuse, and to keep it secure and confidential. This duty arises from multiple sources, including contracts, statutory and common law, industry standards, and specific representations made to Plaintiff and Class Members. It also arises from the foreseeable

risk that unauthorized access—particularly by malicious actors such as hackers—will cause harm to affected individuals, including the invasion of their private health matters.

6.      Defendants breached these duties owed to Plaintiff and Class Members by failing to safeguard their Sensitive Private Information it collected and maintained, including by failing to implement industry standards for data security to protect against, detect, and stop cyberattacks, which failures allowed criminal hackers to access and steal Private Information from Defendants care.

7.      On June 13, 2025, Defendants discovered "suspicious activity within its computer network."[1] Between May 9, 2024 and July 23, 2024, hackers targeted and accessed Defendants' network systems and stole Plaintiffs and Class Members' sensitive, confidential Private Information stored therein, causing widespread injuries to Plaintiff and Class Members.[2]

8.      According to Defendant Effortless Office's notice of the Data Breach, on June 13, 2025, Defendants discovered "suspicious activity within its computer network."[3] In response, Defendants launched an investigation to determine the nature and scope of the Data Breach. The investigation revealed that during the event an unknown, unidentified hacker accessed and exfiltrated files containing Plaintiffs and Class Members' Sensitive Private Information from Defendants' network systems.[4]

9.      Although the Data Breach took place between May 9, 2024 and July 23, 2024, Defendants failed to notify affected individuals that their Sensitive Private Information was compromised until approximately June 13, 2025-diminishing Plaintiffs and Class Members' ability to timely and thoroughly mitigate and address the increased, imminent risk of identity theft and other harms the Data Breach caused.

10.     Defendants failed to adequately protect Plaintiffs and Class Members' Private Information-and failed to even encrypt or redact this highly sensitive data. This unencrypted,

---

[1] Plaintiff's Notice of data breach dated June 13, 2025, attached here to as **Ex. A**.
[2] *Id.*
[3] *Id.*
[4] *Id.*

PROPOSED CLASS ACTION COMPLAINT

unredacted Sensitive Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and its utter failure to protect its patients' sensitive data.

11.     Defendants maintained the Private Information in a reckless and insecure manner. Specifically, Sensitive Private Information was stored on, and/or accessible through, Defendants' network in a condition that was vulnerable to cyberattacks. Upon information and belief, the method of the cyberattack and the risk of unauthorized disclosure of Plaintiff's and Class Members' Private Information were known to Defendants. Accordingly, Defendants knew that failing to implement reasonable security measures left the Sensitive Private Information exposed to a foreseeable and dangerous risk.

12.     Criminals targeted and obtained Plaintiffs' and Class Members' Sensitive Private Information from Defendants' network because of its high value for identity theft and other forms of exploitation. As a direct and proximate result of Defendants' inadequate data security and their failure to exercise reasonable care in handling Private Information, Plaintiffs' and Class Members' data was accessed by hackers and exposed to an unknown number of unauthorized individuals. The resulting risk to Plaintiffs and Class Members is ongoing and significant—and will persist for the rest of their lives.

13.     As a result of the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, concrete injuries, including but not limited to: (a) financial expenses incurred in mitigating the realized and imminent risk of identity theft; (b) loss of time and productivity addressing those risks; (c) actual incidents of identity theft and fraud; (d) financial losses resulting from that identity theft; (e) time lost responding to and recovering from such fraud; (f) the diminished value of their Sensitive Private Information; (g) loss of privacy; (h) emotional distress, including anxiety and stress caused by the breach and its aftermath; and (i) the ongoing risk to their Sensitive Private Information, which remains in Defendants' possession and vulnerable to future unauthorized access, due to Defendants' continued failure to implement adequate data security measures.

14.     Plaintiff and Class Members seek damages and equitable relief requiring Defendants to (a) disclose the full nature of the Data Breach and types of Private Information exposed; (b)

implement data security practices to reasonably guard against future breaches; and (c) provide, at Defendants' expense, all Data Breach victims with lifetime identity theft protection services.

## PARTIES

15.    Plaintiff is an adult individual who at all relevant times has been a citizen and resident of Las Vegas, Nevada.

16.    Defendant Effortless Office Enterprises, LLC is a limited liability company organized under Nevada law and with its principal place of business located in Las Vegas, Nevada.

17.    Defendant Nevada Heart & Vascular Center, LLP is a Nevada limited liability partnership with principal place of business located in Las Vegas, Nevada.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class are citizens of states different from Defendants, as the Data Breach affected Class Members in multiple states.

19.    This Court has personal jurisdiction over Defendants because Defendant Effortless Office's principal place of business is in Nevada and both Defendants engaged in substantial activity in Nevada.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1)–(d) because Defendant Effortless Office's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

**A.    Defendants Owed a Duty to Implement Reasonable Data Security Measures for the Sensitive Private Information They Collected and Maintained.**

21.    Defendant Effortless Office provides cloud-based software and IT services to healthcare providers and other clients.

22.    One of Effortless Office's clients is Defendant Nevada Heart & Vascular Center.

PROPOSED CLASS ACTION COMPLAINT

23.     Plaintiff and Class Members are current and former patients of Effortless Office's clients, including Nevada Heart & Vascular Center.

24.     As a condition of receiving treatment from Defendants' clients, Plaintiff and Class Members were required to entrust Defendants with highly sensitive information, including their names, Social Security numbers, dates of birth, medical information, and health insurance details.

25.     In exchange for receiving Plaintiffs' and Class Members' Private Information, Defendants promised to safeguard this sensitive and confidential data, to use it only for authorized and legitimate purposes, and to delete the information from their systems once it was no longer necessary to retain it.

26.     At the time of the Data Breach, Defendants' computer networks contained unencrypted Sensitive Private Information belonging to Plaintiff and Class Members.

27.     At all relevant times, Defendants knew they were storing and using their networks to store and transmit valuable, sensitive Private Information belonging to Plaintiff and Class Members, and that as a result, their systems would be attractive targets for cybercriminals.

28.     Defendants also knew that any breach of their information technology network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the individuals whose Sensitive Private Information was compromised, as well as intrusion into those individuals' highly private medical information.

29.     Defendants represented to their clients and patients, including Plaintiff and Class Members, that the Private Information collected as a condition of receiving medical care would be kept secure and confidential. Defendants further assured that the privacy of such information would be maintained and that any sensitive information would be deleted once it was no longer required to be retained.

30.     Plaintiff and Class Members relied on these promises from Defendants, sophisticated business entities and IT service provider, to implement reasonable practices to keep their Sensitive Private Information confidential and securely maintained, to use this information for necessary purposes only and make only authorized disclosures of this information, and to delete

Sensitive Private Information from Defendants systems when no longer necessary for its legitimate business or IT management service purpose.

31.     But for Defendants' promises to keep Plaintiffs and Class Members' Sensitive Private Information secure and confidential, Plaintiff and Class Members would not have entrusted their Sensitive Private Information to Defendants. Consumers in general demand security to safeguard their Sensitive Private Information, especially when sensitive information is involved.

32.     Based on the foregoing representations and warranties and to obtain services from Defendants, Plaintiff and Class Members provided their Sensitive Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their promises and obligations to keep such information confidential and protected against unauthorized access.

33.     Plaintiff and Class Members value the confidentiality of their Private Inf01mation and demand security to safeguard their Sensitive Private Information. To that end, Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Sensitive Private Information.

34.     Defendants derived economic benefits from collecting Plaintiffs and Class Members' Private Information. Without the required submission of Sensitive Private Information, Defendants could not perform the services they provide.

35.     By obtaining, using, and benefiting from Plaintiffs and Class Members' Sensitive Private Information, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting that Sensitive Private Information from unauthorized access and disclosure.

36.     Defendants had a duty to adopt reasonable measures to keep Plaintiffs and Class Members' Sensitive Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor, and verify the integrity of its IT networks, and train employees with access to use adequate cybersecurity measures.

37.     Additionally, Defendants had and have obligations created by the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 ("FTC Act"), common law, contract, industry standards,

and representations made to Plaintiff and Class Members, to keep their Private Information confidential and protected from unauthorized disclosure. Defendants failed to do so.

**B.    Defendants Failed to Properly Safeguard the Sensitive Private Information of Plaintiff and Class Members, Leading to the Data Breach.**

38.    On or about June 13, 2025, Defendant Effortless Office began sending Plaintiff and other Data Breach victims letters informing them of the Data Breach ("Notice Letters").

39.    The Notice Letters generally inform as follows, in part:

**What Happened?** Effortless Office discovered suspicious activity temporarily within its computer network. Effortless Office promptly took steps to secure the environment and began an investigation to determine the nature and scope of the issue. In addition, Effortless Office began working to restore impacted systems as quickly as possible. Effortless Office engaged digital forensic specialist to conduct an investigation into what happened and determine whether personal information was accessed or acquired without authorization. The investigation determined that unauthorized access occurred at certain times between May 9, 2024 and July 23, 2024. After determining that personal information may have been impacted, Effortless Office completed a comprehensive programmed and manual review to identify what personal information was impacted and to whom it belonged. On May 12, 2025 Nevada Heart & Vascular Center, LLP learned that your personal information was impacted in connection with the incident.

**What Information Was Involved?** The information that may have been affected in connection with this incident includes your name as well as Date of Birth, Medical Information and Health Insurance Information. *See* Ex. A.

40.    The Notice Letter failed to disclose key details regarding the root cause of the Data Breach, the specific vulnerabilities that were exploited, and the remedial measures taken to prevent a recurrence. To this day, these critical facts have not been explained or clarified to Plaintiff and Class Members, who have a continuing and legitimate interest in ensuring the security of their Sensitive Private Information.

41.    Thus, Defendant Effortless Office's purported 'disclosure' amounts to no real disclosure at all, as it fails to inform Plaintiff and Class Members of the Data Breach's critical facts

with any degree of specificity. Without these details, Plaintiffs and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

42.     To make matters worse, although the Data Breach occurred between May 9, 2024 and July 23, 2024, Defendant Effortless Office waited until June 13, 2025 before notifying the public or affected individuals about it, diminishing Plaintiffs and Class Members' ability to timely and thoroughly mitigate and address harms resulting from their Private Information's unauthorized disclosure.

43.     Plaintiffs and Class Members' Private Information was targeted, accessed, and stolen by cybercriminals in the Data Breach. Criminal hackers accessed and acquired confidential files containing Plaintiffs and Class Members' Private Information from Defendants' network systems, where they were kept without adequate safeguards and in unencrypted form.

44.     Defendants could have prevented this Data Breach by properly training personnel, securing account access through measures like multifactor authentication ("MFA") and requiring forced password resets, and/or securing and encrypting the files and file servers containing Plaintiffs and Class Members' Private Information, but failed to do so.

45.     As the Data Breach evidences, Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information it collected and maintained from Plaintiff and Class Members, such as MFA, standard monitoring and altering techniques, encryption, or deletion of information when it is no longer needed. These failures by Defendants allowed and caused cybercriminals to target Defendants' network, access it, and exfiltrate files containing Plaintiff and Class Member's Private Information.

46.     Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing Plaintiffs and Class Members' Private Information, using controls like limitations on personnel with access to sensitive data and requiring MFA for access, training its employees on standard cybersecurity practices, and implementing reasonable logging and alerting methods to detect unauthorized access.

47.     For example, if Defendants had implemented industry standard logging, monitoring, and alerting systems-basic technical safeguards that any PHI and/or PIT-collecting

company is expected to employ-then cybercriminals would not have been able to perpetrate malicious activity in Defendants' network systems for the period it took to cany out the Data Breach, including the reconnaissance necessary to identify where Defendants stored Sensitive Private Information, installation of malware or other methods of establishing persistence and creating a path to exfiltrate data, staging data in preparation for exfiltration, and then exfiltrating that data outside of Defendants' system without being caught.

48.    Defendants would have recognized the malicious activities detailed in the preceding paragraph if it bothered to implement basic monitoring and detection systems, which then would have stopped the Data Breach or greatly reduced its impact.

49.    Defendants' tortious conduct and breach of contractual obligations, as outlined herein, are demonstrated by their failure to detect the Data Breach until after cybercriminals had already accessed the Private Information of Plaintiffs and Class Members. This failure indicates that Defendants lacked effective systems or safeguards to timely detect, prevent, or mitigate such cyberattacks.

**C.    Defendants Were Aware of the Risk of Cyberattacks Due to the High Vulnerability of Service Providers Handling Sensitive Private Information.**

50.    Defendants' negligence in failing to safeguard Plaintiffs and Class Members' Sensitive Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing such data.

51.    Sensitive Private Information of the kind accessed in the Data Breach is of great value to hackers and cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the dark web.

52.    Private Information can also be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and financial records. This may be accomplished alone, or in combination with other personal information that is connected, or linked to an individual, such as his or her birthdate, birthplace, and mother's maiden name.

53.    Data thieves regularly target entities like Defendants due to the highly sensitive information that such entities maintain. Defendants knew and understood that unprotected Sensitive

Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Sensitive Private Information through unauthorized access.

54.    In light of past high profile data breaches at industry-leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant Effortless Office knew or, if acting as a reasonable IT service provider, should have known that the Sensitive Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

55.    According to the Identity Theft Resource Center's report covering the year 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information increased slightly compared to 2020 (83 percent vs. 80 percent)."[5]

56.    As an IT service provider entrusted with its customers' and clients' PHI, Defendants knew or should have known the critical importance of safeguarding the Sensitive Private Information of Plaintiff and Class Members, as well as the foreseeable consequences of a data breach. These consequences include the substantial financial, emotional, and privacy-related harms imposed on affected individuals. Despite this knowledge, Defendants failed to implement adequate cybersecurity measures to prevent the Data Breach.

57.    Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being wrongfully disclosed to cybercriminals.

---

[5] *See* **Ex. B.,** Identity Theft Resource Center's 2021 Annual Data Breach Report Sets New Record for Number of Compromises," Jan. 24, 2022, available at http://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data- breach-report-sets-new-record-for_ number-of-compromises (last visited June 24, 2025).

PROPOSED CLASS ACTION COMPLAINT

58.    Given the nature of the Data Breach, it was entirely foreseeable that the Private Information of Plaintiffs and Class Members would be targeted by hackers and cybercriminals for malicious purposes. With access to this Sensitive Private Information, cybercriminals can readily engage in a range of harmful activities, including filing fraudulent tax returns, opening unauthorized credit accounts, and committing identity theft in the names of Plaintiffs and Class Members.

59.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on its network server(s), amounting to thousands of individuals' Sensitive Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of that unencrypted data.

60.    Plaintiff and Class Members were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

**D.    Defendants Were Obligated to Follow FTC Rules and Guidance but Failed to Do So.**

61.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

62.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business,* which established cyber-security guidelines for businesses like Defendants. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to detect any security problems.[6]

---

[6] *See* **Ex. C,** *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136proteting-personal-information.pdf (last visited June 24, 2025).

63.     The FTC's guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[7]

64.     The FTC further recommends that companies not maintain confidential personal information, like Sensitive Private Information, longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

65.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses like Defendants must undertake to meet their data security obligations.

66.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential patient data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

67.     These FTC enforcement actions include actions against companies like Defendants.

68.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect sensitive personal information, like Sensitive Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

[7] *Id.*

69.     The FTC has also recognized that consumer data is a new and valuable form o currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[8]

70.     Defendants failed to properly implement basic data security practices, in violation of its duties under the FTC Act.

71.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**E.     Defendants Failed to Comply with Industry Standards.**

72.     A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

73.     In addition, the NIST recommends certain practices to safeguard systems:[9]

    a.  Control who logs on to your network and uses your computers and other devices.

    b.  Use security software to protect data.

    c.  Encrypt sensitive data, at rest and in transit.

    d.  Conduct regular backups of data.

    e.  Update security software regularly, automating those updates if possible.

    f.  Have formal policies for safely disposing of electronic files and old devices.

---

[8] *See* **Ex. D,** Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf.     (Last Visited June 24, 2025).

[9] *See* **Ex. E,** Federal     Trade Commission, "Understanding The NIST Cybersecurity Framework," https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last visited June 24, 2025).

g.  Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

74.     Further still, the Cybersecurity & Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[10]

75.     Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiffs and Class Members' Private Information, resulting in the Data Breach.

---

[10] *See* **Ex. F,** Cybersecurity & Infrastructure Security Agency, "Shields Up: Guidance for Organizations," available at https://www.cisa.gov/shields-guidance-organizations (last visited June 23, 2025).

**F.    Defendants Breached Their Common Law Duty to Secure Plaintiff's and Class Members' Sensitive Private Information.**

76.    Beyond their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the collection, retention, security, safeguarding, deletion, and protection of the Sensitive Private Information entrusted to them. This duty required Defendants to prevent the compromise, loss, theft, unauthorized access, and misuse of such information. Specifically, Defendants were obligated to implement and maintain reasonable data security measures consistent with industry standards and best practices, ensuring that their computer systems, networks, and protocols adequately protected the Sensitive Private Information of Plaintiff and Class Members.

77.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Sensitive Private Information in its possession, including adequately training its employees and others who accessed Sensitive Private Information within its computer systems on how to adequately protect Private Information.

78.    Defendants owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Sensitive Private Information in a timely manner and act upon data security warnings and alerts in a timely fashion.

79.    Defendants owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

80.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

81.    Defendants failed to take the necessary precautions required to safeguard and protect Plaintiffs and Class Members' Private Information from unauthorized disclosure. Defendant's actions and omissions represent a flagrant disregard of Plaintiffs and Class Members' rights.

**G.    Plaintiff and Class Members Sustained Common Injuries and Damages as a Result of Defendants' Conduct.**

82.    Defendants' failure to implement or maintain adequate data security measures for Plaintiffs and Class Members' Sensitive Private Information directly and proximately injured

Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

83.     The ramifications of Defendants' failure to keep secure the Private Information to Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

84.     Plaintiff and Class Members are also at a continued risk because their Sensitive Private Information remains in Defendants' systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendants fail to undertake the necessary and appropriate security and training measures to protect its customers' Sensitive Private Information

85.     As a direct result of Defendants' inadequate and ineffective data security practices, the resulting Data Breach, and the foreseeable consequences of Plaintiff's and Class Members' Private Information falling into the hands of cybercriminals, the risk of identity theft has both materialized and remains imminent. Plaintiff and Class Members have suffered actual injuries and damages, including, without limitation: (a) invasion of privacy; (b) financial costs incurred in mitigating the realized and ongoing threat of identity theft; (c) loss of time and productivity in responding to and managing the consequences of the breach; (d) financial losses resulting from actual identity theft; (e) additional time lost due to identity theft-related complications; (f) deprivation of the value of their Sensitive Private Information; (g) loss of the benefit of their bargain with Defendants; (h) emotional distress, including anxiety and stress resulting from the breach and its aftermath; and (i) the continued risk to their Sensitive Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosure unless and until Defendants implement adequate and appropriate data security measures.

**H.     Plaintiff and Class Members Face a Present and Ongoing Risk of Identity Theft**

86.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

87.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12] The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

88.     A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, chugs, and frequently, personal and medical information like the Sensitive Private Information at issue here. The digital character of Sensitive Private Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.[13] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."

89.     One such example of criminals piecing together bits and pieces of compromised Sensitive Private Information for profit is the development of "Fullz" packages.[26]

90.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Sensitive Private Information to many unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

---

[11] 17 C.F.R. § 248.201.
[12] *Id.*
[13] *See* **Ex. G,** *What Is the Dark Web?,* Experian, available at https://www.experian.com/blogs/ask-experian/what-is- the-dark-web/.

91.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

92.    Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

93.    Then, this comprehensive dossier can be sold-and then resold in perpetuity-to crooked operators and other criminals.

94.    The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact to find that their stolen Sensitive Private Information is being misused, and that such misuse is traceable to the Data Breach

95.    Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice:

A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or Notay fees). All indirect losses are included in the calculation of out-of-pocket loss.[14]

---

[14]*See* **Ex. H,** Erika Hanell, *Bureau of Just. Stat.,* U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft,* 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vitl 8.pdf (last visited June 24, 2025).

PROPOSED CLASS ACTION COMPLAINT

96.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year·, resulting in more than $3.5 billion in losses to individuals and business victims.[15]

97.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Yet, Defendants failed to rapidly report to Plaintiff and the Class that their Sensitive Private Information was stolen.

98.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

99.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Sensitive Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

100.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Sensitive Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

I.     **Loss of Time to Mitigate the Risk of Identify Theft**

101.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Sensitive Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm-yet the asset of time has been lost.

---

[15] *See* **Ex. I,** Federal Bureau of            Investigation, 2019 Internet Crime Report Released, https://www    .fbi.gov/news/stories/2019-internet-crime-report-released-021120.    (Last accessed June 24, 2025)

102.     In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record

103.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

104.     Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

105.     These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[16]

106.     Once Private Information is exposed, there is virtually no way to ensure that it has been fully recovered or protected from future misuse. As a result, Plaintiff and Class Members will be forced to maintain heightened vigilance for years to come—and possibly for the rest of their lives—due to Defendants' conduct that led to the Data Breach.

**J.      Diminished Value of Sensitive Private Information**

107.     Personal data like Private Information is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Sensitive Private Information has considerable market value.

---

[16] *See* **Ex. J,** Federal Trade Commission, *Identity Theft.gov,* https://www.identitytheft.gov/Steps (last visited June 24, 2025).

108.     An active and robust legitimate marketplace for personal information also exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[17] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[18]

109.     As a result of the Data Breach, the Private Information of Plaintiffs and Class Members—which holds inherent market value on both legitimate and illicit markets—has been compromised and diminished in value due to its unauthorized and likely release on the dark web, where it remains highly valuable to threat actors.

**K.     Loss of Benefit of the Bargain**

110.     Furthermore, Defendants' inadequate data security measures deprived Plaintiff and Class Members of the benefit of their bargain. When Plaintiffs and Class Members—patients of Effortless Office's clients—provided their Sensitive Private Information as a condition precedent to receiving services, they did so with the reasonable understanding and expectation that part of the consideration they provided included not only the services themselves but also adequate data security to protect the Sensitive Private Information they were required to disclose.

111.     In fact, Defendants did not provide the expected data security. Accordingly, Plaintiff and Class Members received services of a lesser value than what they reasonably expected to receive under the bargains shuck with Defendants.

   ***Plaintiff's Experiences***

112.     In or around the summer of 2024, Plaintiff commenced medical care with Defendant Nevada Heart & Vascular, LLP.

113.     Plaintiff places a high value on privacy and takes great care in safeguarding his Sensitive Private Information. He diligently protects his Private Information, storing documents

---

[17] *See* **Ex. K,** *DataCoup Landing Page,* https://datacoup.com/. (Last accessed June 24, 2025).
[18] *See* **Ex. L,** Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computennobilepanel.nielsen.com/ui/US/en/fagen.html. (Last accessed June 24, 2025).

PROPOSED CLASS ACTION COMPLAINT

containing such information in secure locations. Plaintiff has never knowingly transmitted unencrypted Sensitive Private Information over the internet or through any other unsecured channel.

114.    Plaintiff would not have provided his Sensitive Private Information to Defendants had he known it would be kept using inadequate data security and vulnerable to a cyberattack.

115.    At the time of the Data Breach Defendants retained Plaintiffs Private Information in their network systems with inadequate data security, causing Plaintiffs Sensitive Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

116.    On or about June 13, 2025, Plaintiff received a Notice Letter from Defendant Effortless Office informing his that his that his Private Information had been accessed and exposed to unauthorized hackers as a result of the Data Breach. According to the Notice Letter, the hackers obtained files containing Plaintiff's Sensitive Private Information, including his name, date of birth, medical information, and health insurance details. *See* Ex. A.

117.    Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff now monitors his financial statements multiple times a week and has spent hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

118.    Plaintiff further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

119.    Plaintiff further believes that his Sensitive Private Information—and that of Class Members—was, and will continue to be, sold and disseminated on the dark web as a result of the Data Breach. This belief is well-founded, as such conduct is consistent with the known modus operandi of cybercriminals who perpetrate cyberattacks of this nature.

120.    The Data Breach has caused Plaintiff to experience significant fear, anxiety, and stress over the fact that his Private Information is now in the hands of cybercriminals. This

emotional distress has been compounded by Defendant's continued failure to fully disclose critical details regarding the nature of the breach, how it occurred, and precisely what information was compromised.

## **CLASS ACTION ALLEGATIONS**

121.    Plaintiff brings this nationwide class action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b).

122.    Plaintiff proposes the following nationwide class definition, subject to amendment as appropriate:

All individuals residing in the United States whose Sensitive Private Information may have been compromised as a result of the Data Breach, including all individuals who received a Notice Letter (the "Class").

123.    Excluded from the Class are Defendants' officers and directors, any entity in which Defendants hold a controlling interest, and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Also excluded are members of the judiciary assigned to this case, as well as their immediate family members and judicial staff.

124.    Plaintiff hereby reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

125.    **Numerosity**. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, Class Members may be identified by Defendants' records, evidence by the notice letters that Defendants sent to victims of the Data Breach.

126.    **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendants unlawfully used, maintained, lost, or disclosed Class Members' Sensitive Private Information

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendants owed a duty to Class Members to safeguard their Sensitive Private Information;

f. Whether Defendants breached their duty to Class Members to safeguard their Private Information;

g. Whether computer hackers obtained Class Members' Sensitive Private Information in the Data Breach;

h. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

i. Whether Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

j. Whether Defendants' conduct was negligent;

k. Whether Defendants breached third-party beneficiary contracts for adequate data security with Class Members;

l. Whether Defendants were unjustly enriched by retention of the monetary benefits conferred on it by Class Members; and

m. Whether Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

127.    **Typicality**. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs Sensitive Private Information, like that of every other Class Member, was compromised in the Data Breach.

128.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

129.    **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiffs and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

130.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial and party resources, and protects the rights of each Class Member.

131.    Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and declaratory relief are appropriate on a class-wide basis.

132.    Accordingly, particular issues are appropriate for certification pursuant to Federal Rule of Civil Procedure 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

    a.    Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Sensitive Private Information;

    b.    Whether Defendants' security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c.    Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

d.    Whether Defendants failed to take commercially reasonable steps to safeguard customer Sensitive Private Information; and

e.    Whether adherence to FTC data security guidelines and/or measures recommended by data security experts would have reasonably prevented the Data Breach.

133.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified by Defendants.

**COUNT I**
**NEGLIGENCE/NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

134.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

135.    Defendants required patients, including Plaintiff and Class Members, to submit sensitive, confidential Private Information to Defendants as a condition of services from Defendants.

136.    Plaintiff and Class Members provided Defendants with their Private Information, including names, Social Security numbers, dates of birth, medical information, and health insurance details.

137.    Defendants had full knowledge of the sensitivity of the Sensitive Private Information entrusted to it, as well as the types of harm that Plaintiff and Class Members could and would suffer if that information were wrongfully disclosed to unauthorized persons.

138.    Defendants owed a duty to Plaintiff and each Class Member to exercise reasonable care in collecting, holding, safeguarding, and protecting the Private Information entrusted to them.

139.    Plaintiff and Class Members were the foreseeable victims of Defendants' inadequate data security and safety practices.

140.    Plaintiff and Class Members had no ability to protect their Private Information in Defendants' possession.

141.    By collecting, transmitting, and storing Plaintiffs' and Class Members' Sensitive Private Information, Defendants owed a duty of care to use reasonable measures to secure and safeguard that information, to prevent its unauthorized disclosure, and to protect it from theft or exfiltration by cybercriminals. This duty included the responsibility to implement effective processes for detecting and identifying malicious activity or unauthorized access on their networks and servers. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that controls for its networks, servers, and systems, and the personnel responsible for them, adequately protected Plaintiffs and Class Members' Sensitive Private Information.

142.    Defendants' duty to implement reasonable security measures arose from the special relationship between Defendants and Plaintiff and Class Members, a relationship recognized by laws and regulations including, but not limited to, the FTC Act and common law. Defendants had the ability to ensure that their networks, servers, and systems were adequately protected against the foreseeable harms a data breach would cause to Plaintiff and Class Members, yet they failed to do so.

143.    Further, Defendants had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

144.    Pursuant to the FTC Act, 15 U.S.C. § 45 *et seq.,* Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' Sensitive Private Information.

145.    Defendants breached their duties to Plaintiff and Class Members under the FTC Act by failing to implement fair, reasonable, and adequate computer systems, data security practices, and procedures to safeguard Plaintiffs' and Class Members' Private Information. Additionally, Defendants failed to ensure that such Private Information was properly encrypted and timely deleted when no longer necessary.

146.    Plaintiffs and Class Members' injuries resulting from the Data Breach were directly and indirectly caused by Defendants' violations of the FTC Act.

147.    Plaintiff and Class Members are within Class Members of persons the FTC Act is intended to protect.

148.    The type of harm that resulted from the Data Breach was the type of harm the FTC Act is intended to guard against.

149.    Defendants' failure to comply with the FTC Act constitutes negligence *per se.*

150.    Defendants' duty to exercise reasonable care in protecting the confidential Sensitive Private Information of Plaintiffs and Class Members arose not only from the applicable statutes and regulations described above, but also from well-established industry standards that require the reasonable safeguarding of such information.

Defendants breached their duties of care and were grossly negligent through acts and omissions, including failing to implement reasonable—or even minimally adequate—measures to protect Plaintiff's and Class Members' Sensitive Private Information from unauthorized disclosure in this Data Breach.

151.    The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

        a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Private Information;

        b.  Maintaining and/or transmitting Plaintiff's and Class Members' Sensitive Private Information in unencrypted and identifiable form;

        c.  Failing to implement data security measures, like adequate MFA for as many systems as possible, to safeguard against known techniques for initial unauthorized access to network servers and systems;

        d.  Failing to adequately train employees on proper cybersecurity protocols;

        e.  Failing to adequately monitor the security of its networks and systems;

        f.  Failure to periodically ensure its network system had plans in place to maintain reasonable data security safeguards;

g.  Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Private Information; and

h.  Failing to adequately notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate damages.

152.  But for Defendants' wrongful and negligent breaches of their duties owed to Plaintiff and Class Members, their Sensitive Private Information would not have been compromised because the malicious activity would have been prevented, or at least, identified and stopped before criminal hackers had a chance to inventory Defendant's digital assets, stage them, and then exfiltrate them.

It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiffs and Class Members' Private Information would injure Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency o cyberattacks and data breaches in the industry.

153.  It was therefore foreseeable that the failure to adequately safeguard Plaintiffs and Class Members' Sensitive Private Information would cause them one or more types of injuries.

154.  As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injuries, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft, or the imminent and substantial risk of identity theft or fraud; (d) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (e) loss of benefit of the bargain; (f) anxiety and emotional harm due to their Sensitive Private Information 's disclosure to cybercriminals; and (g) the continued and certainly increased risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect it.

155.  Plaintiff and Class Members are entitled to damages, including compensatory, consequential, punitive, and nominal damages, as proven at trial.

156.  Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (a) strengthen their data security systems and monitoring procedures; (b) submit to

29

annual independent audits of those systems and procedures; and (c) provide adequate, ongoing credit monitoring services to Plaintiff and all Class Members for their lifetimes.

**COUNT II**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiff and Class Members)**

157.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

158.    Defendant Effortless Office entered into contracts to provide IT services to its clients, which services included IT services, to the benefit of Plaintiff and Class Members.

159.    On information and belief, these contracts are substantially identical and were expressly made for the benefit of Plaintiff and Class Members, as it was their Private Information that Defendant Effortless Office agreed to receive and protect through its services. Accordingly, the collection and protection of Plaintiff's and Class Members' Private Information was the direct and primary objective of the contracting parties.

160.    Defendant Effortless Office knew that if it were to breach these contracts with its clients, Plaintiff and Class Members, would be harmed.

161.    Defendant Effortless Office breached its contracts with its clients and as a result Plaintiff and Class Members were affected by this Data Breach when it failed to use reasonable data security measures that could have prevented the Data Breach, and when it failed to timely notify Plaintiff and Class Members regarding the breach.

162.    Plaintiff and Class Members were harmed by Defendants' failure to use reasonable data security measures to store the Sensitive Private Information that Plaintiff and Class Members provided to their patients who in turn provided that information to Defendants, and Defendants' failure to timely notify Plaintiff and Class Members, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

163.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial, including actual, consequential, and nominal damages, along with costs and attorneys' fees incurred in this action.

30
PROPOSED CLASS ACTION COMPLAINT

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and Class Members)**

164.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

165.    Plaintiff pleads this claim for unjust enrichment in the alternative to the breach of third-party beneficiary contract (Count II).

166.    Plaintiff and Class Members conferred a monetary benefit on Defendants by providing their Sensitive Private Information, which Defendants used to operate their business and generate profit. In exchange, Plaintiff and Class Members were entitled to have their Sensitive Private Information protected through adequate data security measures.

167.    Defendants knew Plaintiff and Class Members conferred a benefit upon it and accepted that benefit by retaining the Private Information and using it to generate revenue.

168.    Defendants failed to secure Plaintiffs and Class Members' Sensitive Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Sensitive Private Information provided Defendants.

169.    Defendants acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

170.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendants calculated to increase their own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own pocket. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of customers' Sensitive Private Information.

171.    Under the circumstances, it would be unjust and inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and Class Members without providing the promised protections.

172.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injuries and damages as set forth herein.

173.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants, as well as an order requiring the disgorgement of all profits, benefits, and other compensation Defendants obtained through their wrongful conduct. This remedy can be effectuated by the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Obringer, individually and on behalf of all others similar! situated, prays for judgment as follows:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent Class Members;

B.    Awarding Plaintiff and Class Members damages, including applicable compensatory, actual, exemplary, and punitive damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and Class Members in an amount to be determined at trial.

D.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and Class Members;

E.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and Class Members;

F.    Awarding attorneys' fees and costs, as allowed by law;

G.    Awarding pre- and post-judgment interest, as provided by law;

H.    Granting Plaintiff and Class Members leave to amend this complaint to conform to the evidence produced at trial; and

I.    Granting any other relief to which Plaintiff and Class Members may be entitled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 25, 2025                    Respectfully submitted,

*/s/Nathan R. Ring*
Nathan R. Ring
Nevada Bar No. 12078
**STRANCH, JENNINGS & GARVEY PLLC**
3100 W. Charleston Blvd.
Suite 208
Las Vegas, Nevada 89102
(725) 235-9750
nring@stranchlaw.com

Hassan Zavareei*
Katherine M. Aizpuru*
David Lawler*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
kaizpuru@tzlegal.com
dlawler@tzlegal.com

*Counsel for Plaintiff and the Putative Class*

*\*Pro hac vice application forthcoming*

33